UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 3, 2017

LETTER TO COUNSEL

RE: *Amanda Beth Green v. Carolyn Colvin;*
Civil No. SAG-16-759

Dear Counsel:

On March 15, 2016, Plaintiff Amanda Beth Green petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Plaintiff's response. (ECF Nos. 16, 17, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Green filed a claim for Supplemental Security Income ("SSI") on October 10, 2010. (Tr. 13). She alleged a disability onset date of December 11, 2009. (Tr. 12). Her claim was denied initially and on reconsideration. (Tr. 139-41, 146-47). A hearing was held on March 2, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 175). Following the hearing, the ALJ determined that Ms. Green was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 113-129). The Appeals Council granted Ms. Green's request for review, (Tr.130-34), after which a second hearing was held on June 6, 2014. (Tr. 12). The ALJ again denied benefits. (Tr. 12-25). The Appeals Council thereafter denied Ms. Green's request for review, (Tr. 1), so the ALJ's 2014 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Green suffered from the severe impairments of obesity, chronic liver disease and cirrhosis, affective/bipolar disorder, PTSD/anxiety disorder, borderline intellectual functioning, history of intravenous drug use. (Tr. 14). Despite these impairments, the ALJ determined that Ms. Green retained the residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 416.967(c) except the claimant can never climb ladders, ropes, or scaffolding, and she is unable to tolerate exposure to workplace hazards such as unprotected heights and moving machinery. She can use commonsense understanding to perform detailed but uninvolved oral or written instructions, consistent with a range of simple, routine, and unskilled work at or below reasoning level two as those terms are defined in

>   the Dictionary of Occupational Titles.  She can work with the general public, co-workers, and supervisors occasionally.  Furthermore, Ms. Green can perform low-stress jobs, defined as work that is not performed at an assembly-line pace or production pace, with few workplace changes and little independent decision making.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Green could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled.  (Tr. 24).

On appeal, Ms. Green argues that the ALJ failed to determine that she had an intellectual disability as defined at Medical Listings 12.05(C) and 12.05(D).  Pl.'s Mot. 1.  This argument lacks merit and is addressed below.

Ms. Green argues that the ALJ's listing analysis is erroneous because "it was based on conclusions and findings of fact which were not supported by substantial evidence and/or were contrary to Social Security law and regulation."  Pl.'s Mot. 16, 16-26.  If Ms. Green is right, the ALJ's listing analysis would violate the Fourth Circuit's mandate in *Fox v. Colvin*, 632 Fed. App'x. 750 (4th Cir. 2015).   Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  In *Fox*, the Fourth Circuit held that the ALJ's listing analysis was deficient because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal requirements to the record evidence.'"  *Id.* at 754 (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)).  That is, the ALJ did not apply any findings or medical evidence to the identified disability listings and offered nothing to reveal why he was making his decision.  *Radford*, 734 F.3d at 295.  Thus, *Fox* requires that an ALJ provide express analysis, with factual support, to conclude that a listing has not been met at step three.  The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error where the evidence of record otherwise demonstrated that the claimant did not meet a listing. *Fox*, 632 Fed. App'x. at 755.  Rather, the *Fox* Court emphasized that it is not this Court's role to "engage[ ] in an analysis that the ALJ should have done in the first instance," or "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."  *Id.*  The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review."  *Id.*

In the instant case, regarding his findings at step three of the sequential evaluation, the ALJ stated that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing[]… 12.05." (Tr. 16).  The ALJ went on to provide a detailed explanation, with references to the evidence of record, to support his conclusion that Ms. Green did not satisfy either Listing 12.05(C) or 12.05(D).  (Tr. 16-23).  For a claimant to have an intellectual disability, Listing 12.05 requires "significant[]

*Green v. Colvin*
Civil No. SAG-16-759
January 3, 2017
Page 3

subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period … before age 22 … [demonstrated by:]
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

Pl.'s Mot. 16-17 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05).

First, as to Listing 12.05(D), the ALJ determined that Ms. Green possessed only moderate – not marked – difficulties in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 16). In reaching these findings, the ALJ explained that "the record reflects that Ms. Green retains the capacity to take care of some personal needs, prepare simple meals for her and her children, clean her apartment, wash laundry, use public transportation, shop for groceries, handle her finances, maintain social contact with her children's father, and care for her children (Exhibits 3E and 7E), albeit at a slower pace and while accounting for her impairment symptoms." (Tr. 16). "[T]he record [also] reflects that Ms. Green retains the capacity to pay bills, count change, handle a savings account, and use a checkbook/money order (Exhibit 7E, page 5)." *Id.* This narrative of the functional impact of Ms. Green's mental impairments accounts for the only two Function Reports submitted into evidence. *See* Exhibits 3E and 7E (Tr. 299-306, 324-33). In addition, though appearing within the residual functional capacity section of the opinion, the ALJ cites to observations regarding Ms. Green's mental functional capacity made by consultative examiner Charles N. Zeitler, III, Psy.D. *See* (Tr. 21-23). Dr. Zeitler characterized Ms. Green as "organized, logical, and goal-directed with her thought content, and no problems with attention, concentration, impulsivity, thought content, thought processes, homicidal ideation, or suicidal ideation were observed (Exhibit 27F, page 9)." (Tr. 22, 734). Dr. Zeitler further commented that Ms. Green "appeared to exaggerate or over-report [mental health] symptoms when possible." *Id.* On the basis of Ms. Green's statements regarding her abilities, the above statements in Dr. Zeitler's report, and other supporting evidence in the record, the ALJ concluded that Ms. Green lacked the "deficien[cy] [in] adaptive functioning" necessary for a determination of intellectual disability. (Tr. 22). Further, as to episodes of decompensation,[1] the ALJ found none; aside from "a history of hospitalization as a teenager and a brief one-day admission in early 2010, during the period at issue, there is no evidence of an extended mental health hospitalization or symptoms of extended duration resulting in a loss of adaptive functioning." (Tr. 16, 22).

---

[1] "Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least two weeks." (Tr. 16).

*Green v. Colvin*
Civil No. SAG-16-759
January 3, 2017
Page 4

In order to meet a Listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). After failing to find marked restrictions in two or more areas of Ms. Green's daily life and functioning or evidence of repeated, extended episodes of decompensation, the ALJ properly concluded that Ms. Green does not have an intellectual disability as defined at Listing 12.05(D). (Tr. 16).

The ALJ also determined that Ms. Green did not satisfy the "full scale IQ of 60 through 70" required by both Listings 12.05(C) and 12.05(D). 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05. The only full scale IQ ("FSIQ") score provided in the record comes from a February, 2014 psychological evaluation by Dr. Zeitler. *See* (Tr. 726-37). Although Ms. Green's FSIQ score of 69 fell within the score range required by Listings 12.05(C) and 12.05(D), Dr. Zeitler qualified this score as "*somewhat limited* by anxiety and *likely an underestimate* of [Ms. Green's] true potential." (Tr. 22) (emphasis added). The ALJ credited Dr. Zeitler's tempering of the FSIQ score as consistent with evidence in the record that supports a greater capacity for intellectual functioning by Ms. Green than the FSIQ score alone would suggest. (Tr. 17). Ms. Green implies that the ALJ erred in granting limited weight to Dr. Zeitler's opinion, Pl.'s Mot. 24-25, especially with respect to Ms. Green's FSIQ score of 69 and to Dr. Zeitler's finding of "moderate to marked limitations in concentration, persistence, pace, social functioning, performing at a consistent pace, and completing a normal workday without interruption from psychologically based symptoms." (Tr. 22).

A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). As previously noted, Dr. Zeitler was a consultative examiner, not a treating physician and, as such, his opinion is not entitled to controlling weight. Even so, the ALJ identified the sources in the record – including remarks within Dr. Zeitler's report – that contradicted Dr. Zeitler's conclusions regarding Ms. Green's adaptive functioning. (Tr. 22). As such, the ALJ's reasoning is legally sound and is entitled to deference.

Moreover, even if Ms. Green's FSIQ score of 69 is taken at face value, Ms. Green failed to satisfy the other necessary elements of Listings 12.05(C) and 12.05(D). Ms. Green's "stated independence with caregiving [to her four children] and activities of daily living," (Tr. 17), as summarized above, runs contrary to showing "a physical or other mental impairment imposing an additional and significant work-related limitation of function" required by Listing 12.05(C), or the marked difficulties in daily and social functioning required by Listing 12.05(D). Indeed,

the claimant made these statements in 2010 and 2011 through the Social Security Administration Function Reports, and again in 2014 during the psychological examination with Dr. Zeitler. *See* Exhibits 3E, 7E, and 27F (Tr. 299-306, 324-33, 727-30). The ALJ appropriately weighed the consistency of these statements over time and, in applying them to the requirements of 12.05(C) and 12.05(D), determined that the "work-related limitation of function" prong was not met.

Ms. Green's reliance on *Branham v. Heckler*, 775 F.2d 1271 (4th Cir. 1985) and *Flowers v. U.S. Department of Health and Human Services*, 904 F.2d 211 (4th Cir. 1990) is misplaced because the cases are factually distinguishable. Pl.'s Mot. 20. In *Branham*, the claimant had a second grade education, was functionally illiterate, was "mildly mentally retarded," suffered from epilepsy since childhood, had an IQ score of 63, and had received a psychotic disorder diagnosis of agoraphobia. *Branham*, 755 F.2d at 1272. In addition to greater mental limitations than Ms. Green, the *Branham* claimant satisfied the "physical or other mental impairment imposing additional and significant work-related limitation of function" prong of 12.05(C), on the basis of a back injury that prevented him from performing past relevant work. *Id.* at 1273. Similarly, the *Flowers* claimant had a seventh grade education, scored an FSIQ of 68, suffered from seizures and a hip problem, and, like the *Branham* claimant, could not perform his past relevant work. *Flowers*, 904 F.2d at 213-24. In both *Branham* and *Flowers*, the inability to perform past relevant work was critical to the claimants meeting the "work-related limitation" prong of 12.05(C). *Id.* at 214; *Branham*, 755 F.2d at 1273. Ms. Green, in contrast, has no past relevant work. (Tr. 23). Moreover, neither the *Branham* nor *Flowers* claimants' FSIQ score was contested – meaning the FSIQ score prong of 12.05(C) was squarely met in each instance – whereas here the ALJ cast doubt on the validity of Ms. Green's FSIQ score and grounded his opinion in other evidence. The ALJ explicitly addresses Ms. Green's ninth/tenth grade education, troubled childhood, substance abuse and related hospitalizations, brief work history, and severe physical and mental impairments and treatment, (Tr. 14-23), but weighs Ms. Green's impairment symptoms against her demonstrated ability for self-care and caring for others in key areas of daily life and ultimately concluded that the latter hinders a finding of intellectual disability. *See, e.g.* (Tr. 19).

This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Although Ms. Green cites to other evidence that could be used to support a contrary conclusion, in light of the substantial evidence relied upon by the ALJ, the ALJ's determination must be affirmed.

For the reasons set forth above, Ms. Green's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

*Green v. Colvin*  
Civil No. SAG-16-759  
January 3, 2017  
Page 6

        Sincerely yours,

        /s/

        Stephanie A. Gallagher  
        United States Magistrate Judge